IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| THOMAS J. HALULAKOS | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| MARK KRESEVIG, et al. | : | NO. 07-0865 |

**MEMORANDUM**

**Padova, J.**                                                                                                                        **December 4, 2007**

Currently before the Court are Petitioner Thomas J. Halulakos's pro se Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 (Docket No. 1), Petitioner's Objections to the Report and Recommendation by United States Magistrate Judge Peter B. Scuderi (Docket No. 15), and Petitioner's Motion to File Supplemental Objections to the Report and Recommendation (Docket No. 16). For the reasons that follow, Petitioner's Motion to File Supplemental Objections is granted, the Objections are overruled, and the Report and Recommendation is adopted as the decision of the Court.

**I.        FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

On October 15, 2003, Petitioner entered pleas of guilty to thirty-two counts of burglary, one count of criminal trespass, and three counts of attempted burglary before the Honorable Linda Ludgate of the Court of Common Pleas of Berks County. The charges related to a series of thefts and burglaries committed over a two month period in Berks and Lancaster Counties. Judge Ludgate sentenced Petitioner to an aggregate term of eight to sixteen years of imprisonment. Petitioner did not file a direct appeal.

On September 9, 2004, Petitioner filed a pro se petition for post-conviction relief pursuant to Pennsylvania's Post Conviction Relief Act ("PCRA"), 42 Pa. Con. Stat § 9541, et seq. Counsel

was appointed and filed an amended PCRA petition, alleging that: (1) a violation of Petitioner's Fifth Amendment right to counsel occurred when police continued to question Petitioner after he requested an attorney; (2) counsel provided ineffective assistance by failing to file a pretrial motion to suppress Petitioner's confession and a post-sentence motion to withdraw Petitioner's guilty plea; and (3) counsel provided ineffective assistance by advising Petitioner to plead guilty.

      A hearing was held on April 29, 2005, and the PCRA court dismissed Petitioner's petition on August 3, 2005. Petitioner appealed to the Superior Court raising the previously asserted claims and further asserting that: (1) the PCRA court erred when it refused to allow testimony from Petitioner's father and PCRA counsel; (2) the PCRA court erred when it denied Petitioner's request for discovery; and (3) Petitioner's due process rights were violated under Brady v. Maryland, 373 U.S. 83 (1963), when the Commonwealth failed to disclose portions of Petitioner's interrogation by police officers.

      On August 14, 2006, the Superior Court affirmed the denial of PCRA relief. Commonwealth v. Halulakos, 909 A.2d 872 (Pa. Super. 2006) (table). Petitioner filed a petition for allowance of appeal in the Pennsylvania Supreme Court which was denied on January 17, 2007.

      On February 26, 2007, Petitioner filed the instant petition for a federal writ of habeas corpus asserting the following claims: (1) a violation of Petitioner's Fifth Amendment right to counsel occurred when police continued to question Petitioner after he requested an attorney, rendering his guilty plea involuntary; (2) a violation of Petitioner's due process rights under Brady v. Maryland, 373 U.S. 83 (1963), occurred when the Commonwealth failed to disclose portions of Petitioner's interrogation by police officers, rendering his guilty plea involuntary; and (3) the PCRA court erred when it refused to allow testimony from Petitioner's father and PCRA counsel, and when it denied

Petitioner's request for discovery.

On March 21, 2007, we referred this matter to Magistrate Judge Peter B. Scuderi for a Report and Recommendation. Respondent subsequently filed an answer asserting that Petitioner is not entitled to relief because his claims are procedurally defaulted and, in the alternative, without merit. On October 11, 2007, Magistrate Judge Scuderi submitted a Report and Recommendation that the Petition be denied. Petitioner filed Objections to the Report and Recommendation on October 29, 2007. He also filed a motion seeking leave to file supplemental objections on November 23, 2007.[1]

## II.    LEGAL STANDARD

Where a habeas petition has been referred to a magistrate judge for a Report and Recommendation, the district court "shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. [The Court] may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate." 28 U.S.C. § 636(b).

The Antiterrorism and Effective Death Penalty Act ("AEDPA"), which became effective on April 24, 1996, amended the standards for reviewing state court judgments in federal habeas petitions filed under 28 U.S.C. § 2254. Werts v. Vaughn, 228 F.3d 178, 195 (3d Cir. 2000). AEDPA increases the deference federal courts must give to the factual findings and legal determinations of the state courts. Id. at 196 (citing Dickerson v. Vaughn, 90 F.3d 87, 90 (3d Cir. 1996)). Pursuant to 28 U.S.C. § 2254(d), as amended by AEDPA, a petition for habeas corpus may be granted only if (1) the state court's adjudication of the claim resulted in a decision contrary to, or

---

[1] Petitioner's proposed Supplemental Objections raise no new objections to any portion of the Magistrate Judge's Report and Recommendation. Rather, they only repeat or provide additional argument with respect to the Objections he initially filed on October 29, 2007.

involved an unreasonable application of, "clearly established Federal law, as determined by the Supreme Court of the United States;" or if (2) the adjudication resulted in a decision that was "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1)-(2). Factual issues determined by a state court are presumed to be correct and the petitioner bears the burden of rebutting this presumption by clear and convincing evidence. Werts, 228 F.3d at 196 (citing 28 U.S.C. § 2254(e)(1)).

The Supreme Court has further explained that "[u]nder the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." Williams v. Taylor, 529 U.S. 362, 412-13 (2000). Additionally, "[u]nder the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Id. at 413. The "unreasonable application" inquiry requires the habeas court to "ask whether the state court's application of clearly established federal law was objectively unreasonable." Id. at 409. "[A]n unreasonable application of federal law is different from an incorrect application of such law and a federal habeas court may not grant relief unless that court determines that a state court's incorrect or erroneous application of clearly established federal law was also unreasonable." Werts, 228 F.3d at 196 (citing Williams, 529 U.S. at 411).

**IV.   DISCUSSION**

The Petitioner objects to the Magistrate Judge's Report and Recommendation with respect

4

to the following claims.[2]

    A.    <u>Fifth Amendment Claim</u>

Petitioner's first claim in his habeas petition is that his Fifth Amendment right to counsel was violated when police continued to interrogate him after he requested an attorney, rendering his guilty plea involuntary. This claim relates to an incident that occurred on March 8, 2003, while Petitioner was in a temporary holding cell at the headquarters of the Reading Bureau of Police. The following facts are taken from the PCRA court opinion dated August 3, 2005. Criminal Investigator Harold Shenk ("Shenk") approached Petitioner and began talking to him about his deceased brother, whom he had known. Shenk spoke to Petitioner for no less than three, but no more than five minutes. At some point during the conversation, Shenk asked Petitioner about the investigation that his fellow officers were conducting and the vehicle that the police impounded at the scene. Petitioner responded that he would "let the cops or detectives figure it out for themselves," and that he would "let his attorneys or lawyers handle the situation." After this short conversation, Shenk departed. Shenk did not inform Petitioner of his <u>Miranda</u> rights during this conversation, and he never discussed this conversation with any other officer. Two days later, on March 10, 2003, four detectives came to the Berks County prison to speak to Petitioner. At this meeting, Petitioner signed a waiver of his <u>Miranda</u> rights, and then gave a statement in which he confessed to many of the crimes charged.

The state court found that Petitioner did not invoke his Fifth Amendment right to counsel because his statement that he would "let his attorneys or lawyers handle the situation" was not

---

[2]Neither party objects to the Magistrate Judge's finding that Petitioner's claims are not procedurally defaulted. Therefore, we need not discuss this portion of the Magistrate Judge's Report and Recommendation.

sufficiently clear such that Shenk, acting as a reasonable police officer under the circumstances, should have understood this statement to be a request for an attorney.

The Magistrate Judge notes that Petitioner asserts that he did indeed request an attorney and testified at the PCRA court evidentiary hearing that during his conversation with Shenk: "I told him I wanted a lawyer and that I won't answer any questions until an attorney is present." However, as mentioned above, Shenk testified that Petitioner did not request an attorney, and that he simply made a statement that he would let his lawyers handle the situation. Additionally, Petitioner's attorney testified that Petitioner never mentioned the conversation with Shenk at any time, nor did he mention the invocation of his Fifth Amendment rights. In light of this evidence, the Magistrate Judge recommends denying this claim because the state court's factual finding that Petitioner did not invoke his Fifth Amendment right to an attorney is fairly supported by the record, Petitioner's allegations are insufficient to overcome the presumption that the state court factual finding is correct, and the state court's conclusion is not contrary to nor an unreasonable application of Supreme Court precedent.

Petitioner objects to this portion of the Report and Recommendation. Petitioner first objects to the following statement in the Magistrate Judge's Report: "Shenk testified that Petitioner did not request an attorney, and that he simply made a statement that he would let his lawyers handle the situation." See R&R at 10. Petitioner asserts that Shenk never testified that Petitioner did not request an attorney. Rather, according to Petitioner, Shenk specifically testified at the PCRA hearing that "I remember him saying something to the effect he'll let his lawyer handle this." N.T. 4/29/05 at 52-53. Additionally, Petitioner asserts that when PCRA counsel asked Shenk what his response was to this statement by Petitioner, Shenk testified, "That was it. Obviously I knew we weren't

going to discuss anything." N.T. 4/29/05 at 53. PCRA counsel next asked: "Did you not discuss anything with him because he had said that let my lawyer handle it?" Shenk replied: "That along with the fact that – ." Id. At that point the District Attorney objected. The court subsequently stated: "Well, I think it is clear that he said what he did and he left, so I'll sustain the objection." Id. at 54. Petitioner asserts, therefore, that Shenk clearly interpreted Petitioner's statement as an invocation of his right to counsel. Consequently, Petitioner contends that, based on a totality of the circumstances, a reasonable officer would have understood his comments to have been an invocation of his Fifth Amendment right to counsel. Petitioner also objects to the Magistrate Judge's reliance on the fact that Petitioner's attorney testified that Petitioner never mentioned the conversation with Shenk at any time and never mentioned the invocation of his Fifth Amendment rights. See R&R at 10. Petitioner asserts that this is not relevant to the determination of whether he invoked his Fifth Amendment right to counsel.

These objections are overruled. Once a defendant invokes his Fifth Amendment right to counsel, all further interrogation must cease and subsequent interrogation may not begin until an attorney has been provided or the defendant himself reinitiates conversation with the police. Edwards v. Arizona, 451 U.S. 477, 484-85 (1981). The Edwards rule requires courts to "determine whether the accused actually invoked his right to counsel." Davis v. United States, 512 U.S. 452, 458 (1994) (quotation and citation omitted). This is an objective inquiry. Id. at 459. A defendant must "articulate his desire to have counsel present sufficiently clearly that a reasonable police officer in the circumstances would understand the statement to be a request for an attorney. Id. "If a suspect makes a reference to an attorney that is ambiguous or equivocal in that a reasonable police officer in light of the circumstances would have understood only that the suspect might be invoking the right

to counsel," Edwards does not apply. Id. (emphasis in original). The state court's adjudication of this claim is not contrary to nor an unreasonable application of Supreme Court law. The testimony indicates that Petitioner only made an ambiguous reference to an attorney. Shenk testified: "And another thing I recall [Petitioner] mentioning to me or saying to me was that he would let his attorneys or lawyers handle the situation," and "I remember him saying something to the effect he'll let his lawyers handle this." N.T. 4/29/05 at 50, 52-53. Petitioner's statements were merely ambiguous references to an attorney. A reasonable police officer in light of the circumstances would have understood only that Petitioner might be invoking the right to counsel, not that he was invoking the right to counsel. The fact that Shenk choose to cease the conversation with Petitioner following this comment does not alter this conclusion of how a reasonable officer would have understood Petitioner's statements. Additionally, while Petitioner is correct that the fact that he never mentioned the conversation with Shenk to his attorney is not relevant in determining what a reasonable officer would have understood his comments to mean, this information is relevant in assessing whether there is support for the state court's factual findings and whether the state court's adjudication of this claim was reasonable.

    2.  *Brady* claim

Petitioner's next claim alleges that the prosecution violated the due process standards enunciated in Brady v. Maryland, 373 U.S. 83, 87 (1963), by withholding favorable evidence, specifically the content of the conversation between him and Shenk. In addressing this claim, the state court noted:

> The information that [Petitioner] seeks is not exculpatory material. . . . Furthermore, a review of the PCRA hearing transcript shows that the information [Petitioner] sought was disclosed. [Petitioner]

> requested discovery regarding the existence of all interrogations and all interrogating detectives. A review of the record of the PCRA court hearing shows that Petitioner knew the names of the interrogating detectives. Furthermore, [Petitioner] was the person being interrogated and therefore has personal knowledge.

Commonwealth v. Halulakos, No. 1454-03 at 7 (Berks County Ct. Comm. Pl. Oct. 13, 2005). The Magistrate Judge recommends that these findings of the state court are not contrary to nor an unreasonable application of federal law. The Magistrate notes that Petitioner had to have been aware of the content of the interrogation because he was the individual being questioned, and that, though Petitioner may not have known Shenk's name, this information would not have impacted Petitioner's decision to plead guilty.

Petitioner objects to this finding by the Magistrate Judge. He asserts that the record illustrates that the Commonwealth suppressed Shenk's identity. He further asserts that even though he was aware of the content of the interrogation, this does not negate the duty of the prosecutor to disclose Petitioner's statement during the custodial interrogation. Petitioner relies primarily on the decision by the United States Court of Appeals for the Third Circuit in Gov't of the Virgin Islands v. Martinez, 780 F.2d 302 (3d Cir. 1985). In Martinez, the defendant confessed to a police detective that he shot an individual named Gomez, who, armed with a knife and a shotgun, had beaten in a window of the house where Martinez was staying and had pointed the gun at him. Id. at 304. Martinez, who primarily spoke Spanish, never told his English-speaking court-appointed attorney about this confession or about Gomez's gun. Id. Instead, Martinez told his attorney that he had a valid alibi. Id. Martinez's confession, therefore, was both inculpatory and exculpatory because it not only put the prosecution in a position to know that there was little basis for his alibi defense, but also that there was considerable question about the elements of premeditation and deliberation. Id.

9

at 304-05. The Third Circuit found that there was a reasonable probability that the result of the trial would have been different had the Government disclosed the confession by Martinez. Id. at 306. The Third Circuit rejected the Government's argument that there was no Brady violation because Martinez himself knew of the exculpatory evidence and simply lied to his attorney. Id. at 308. Rather, the Third Circuit remanded to the district court for a determination of whether, among other issues, Martinez was incapable, for any reason, of communicating truthfully with his attorney. Id. Petitioner argues in the instant case, that, just as the Third Circuit did in Martinez, we should reject the argument that there was no Brady violation in this case merely because Petitioner himself was aware of the conversation he had with Shenk.[3]

In Brady, the Supreme Court held "that the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or punishment, irrespective of the good faith or bad faith of the prosecution." Brady, 373 U.S. at 87. The Court has since held that the duty to disclose such evidence is applicable even though there has been no request by the accused, United States v. Agurs, 427 U.S. 97, 107 (1976), and that the duty encompasses impeachment evidence as well as exculpatory evidence. United States v. Bagley, 473 U.S. 667, 676 (1985). Evidence is material "if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different."

---

[3]Petitioner also relies on United States v. McElroy, 697 F.2d 459 (2d Cir. 1982). In McElroy, the court reversed the defendant's conviction because the Government failed to disclose that he had invoked his Miranda rights prior to making an incriminating statement. The court rejected the Government's argument that McElroy was not entitled to any relief because his counsel could have obtained the information from McElroy. However, McElroy is clearly distinguishable from the instant case because an investigator admitted that McElroy invoked his Miranda rights and the Government had in its possession another investigator's report indicating this assertion of Miranda rights but had failed to disclose it to defense counsel.

Id. at 682.

Unlike the cases relied upon by Petitioner, the record in the instant case shows that the evidence the Government allegedly failed to disclose is not material. Given that Petitioner did not invoke his Fifth Amendment right to counsel, as detailed above, there is no reasonable probability that the result of the proceedings against Petitioner would have been different had the existence of his conversation with Shenk and its contents been disclosed to the defense. Consequently, the state court's adjudication of Petitioner's Brady claim is not contrary to nor an unreasonable application of Supreme Court precedent, and Petitioner's objections are without merit.

### 3. Claim of PCRA Court Error

Petitioner's third claim is that the PCRA court erred when it failed to allow testimony from his father and his PCRA counsel at his evidentiary hearing, and by denying his request for discovery. The Magistrate Judge recommends finding that the issues of whether a PCRA petitioner is entitled to discovery, or whether testimony should have been allowed, are questions of state law, and a federal habeas court cannot reexamine state court determinations on state law questions. Alternatively, the Magistrate Judge states that even if Petitioner had been entitled to discovery, or if the PCRA Court should have allowed the testimony at issue, Petitioner would not be entitled to federal habeas corpus relief because errors in the state post conviction process are not cognizable on federal habeas review. Thus, the Magistrate Judge recommends that Petitioner's claim on the basis of alleged error by the PCRA court be denied. Petitioner objects and asserts that claims of PCRA Court error are cognizable on federal habeas review.[4]

---

[4] The cases Petitioners relies upon are inapposite to the instant case. For example, Petitioner quotes language from Biros v. Bagley, 422 F.3d 379 (6th Cir. 2005), which he says supports his claim that errors by a state court in the admission of evidence are cognizable in a federal habeas

Petitioner's claim of error on the part of the PCRA court is not cognizable in a federal habeas petition. Federal habeas courts are authorized to provide relief only where a petitioner is in custody or under a sentence imposed in violation of the Constitution or the laws or treaties of the United States. See 28 U.S.C. §§ 2254-2255. "Thus, the federal role in reviewing an application for habeas corpus is limited to evaluating what occurred in the state or federal proceedings that actually led to the petitioner's conviction; what occurred in the petitioner's collateral proceeding does not enter into the habeas calculation." Hassine v. Zimmerman, 160 F.3d 941, 954 (3d Cir. 1998). Consequently, we overrule Petitioner's objections with respect to this claim.

An appropriate order follows.

---

proceeding. However, unlike Petitioner's claim here, Biros concerned alleged errors by a state court in the admission of evidence at the trial which led to the defendant's conviction, not errors during a post-conviction collateral attack such as a PCRA proceeding. Id. at 391. Other cases cited by Petitioner are similarly inapplicable.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| THOMAS J. HALULAKOS | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| MARK KRESEVIG, et al. | : | NO. 07-0865 |

# ORDER

   **AND NOW**, this 4th day of December 2007, upon careful and independent consideration of the Petition for Writ of Habeas Corpus (Docket No. 1), the Report and Recommendation of United States Magistrate Judge Peter B. Scuderi (Docket No. 14), Petitioner's Objections (Docket No. 15), and Petitioner's Supplemental Objections which are attached to his Motion for Permission to File Supplemental Objections, **IT IS HEREBY ORDERED** that:

   1. Petitioner's Motion for Permission to File Supplemental Objections (Docket No. 16) is **GRANTED**;

   2. Petitioner's Objections and Supplemental Objections are **OVERRULED**;

   3. The Report and Recommendation is **APPROVED** and **ADOPTED**;

   4. The Petition for Writ of Habeas Corpus is **DISMISSED**;

   5. A certificate of appealability is **DENIED** pursuant to 28 U.S.C. § 2253(c)(2); and

   6. The Clerk is directed to mark this matter **CLOSED**.

                BY THE COURT:

                s/ John R. Padova, J.
                John R. Padova, J.